ANNELY v. DeSAUSSURE.

1. The points decided on the former appeal in this cause (12 *S. C.* 488) stated.
2. To action for foreclosure of a mortgage on the undivided interest of a tenant in common in real property, the purchaser of such interest from the mortgagor is a proper party.
8. Where a co-tenant under an honest conviction of exclusive ownership

    puts improvements upon the common property, a mortgage upon the other tenant's interest should be so foreclosed as to give to the improving tenant the part improved by him, or if that be impracticable he should have so much of the proceeds of sale as were due to the improvements. *Scaife* v. *Thomson,* 15 *S. C.* 337, approved.

4. And he is not liable to account for such rents and profits as were due to the improvements put upon the property.

5. Suggestions as to how the costs should be paid.

Before MACKEY, J., Charleston, May, 1881.

This was an action by Amelia L. Annely and Julia A. Blake, as devisee and executrix of Anna M. Annely, to foreclose a mortgage given by John W. Lewis, on his one fourth interest in the Commercial Wharves of Charleston, to secure the payment of two bonds of the same date and for the same amount, payable, one to Amelia L. Annely and the other to Anna M. Annely. After the execution of the bonds, Anna M. Annely died, and by her last will and testament appointed Julia A. Blake, executrix, and gave her entire estate to Julia A. Blake, Francis P. Lewis and John W. A. Lewis. The mortgagor died, and W. G. DeSaussure became the sole executor, with full power to sell all of his testator's lands. Acting under such power, and with the co-operation of the other owners, and, as he supposed, with the assent of the mortgagees, he made sale of his testator's interest in the Commercial Wharves for a full price to the "Commercial Wharf and Cotton Press Company," who, in full persuasion of a perfect title, at once erected very costly improvements. The defendants were W. G. DeSaussure, executor, the purchaser, and the heirs-at-law of John W. Lewis, two of whom were devisees of Anna M. Annely. For a more particular statement, reference is made to the case as reported in 12 *S. C.* 488.

Upon the return of the cause to the Circuit Court it was referred to the Master to inquire into the matters directed by the Supreme Court. The [Master declined to hear testimony *de novo,* and confining his inquiry to two points, reported that there were no persons having any interest in the assets of the estate of Anna M. Annely except the three devisees before the Court, and that actual partition of the premises was imprac-

ticable.   Exceptions *to* this report were overruled by the Circuit Judge and order of foreclosure passed upon one-sixth (that is, one fourth less two thirds in one eighth) of the entire property ; and the Commercial Wharf and Cotton Press Company were ordered to pay the costs.

This company and also W. G. DeSaussure, executor, appealed to this Court upon exceptions which raised the questions considered in the opinion.

Messrs. *Simonton & Barker, DeSaussure & Son,* for appellants.

Messrs. *Campbell & Whaley,* contra.

June 30, 1882.   The opinion of the Court was delivered by

MR. JUSTICE McIVER.   This was an action to foreclose a mortgage on an undivided fourth part of certain real property in the city of Charleston, known as the Commercial Wharves. Inasmuch, however, as the case has been before the Court on a former occasion, when it was fully reported (12 *S. C.* 488), it will be unnecessary to encumber this opinion with a detailed statement of the facts.   We, propose, therefore, to confine ourselves to the consideration of the questions which are now presented for our decision.

We think that the former decision settled two things.   1st. That the plaintiffs were entitled to have their mortgage foreclosed in this proceeding.   2d.   That F. P. Lewis and J. W. Lewis, Jr., not having appealed from the former Circuit decree, were bound by its terms and that their rights must stand as settled by that decree.   The practical result, therefore, is that the plaintiffs are entitled to have a foreclosure of their mortgage upon the one undivided sixth part of the property known as the Commercial Wharves, but how that should be done — what provision, if any, should be made in regard to the improvements put upon the property by the Commercial Wharf and Cotton Press Company, and how the account for rents and profits of

the mortgaged premises should be taken, were left unsettled by the former decision of this Court. As is said in the opinion of Willard, C. J., " So far as it regards the question of improvements made jointly by the assignee of a tenant subject to mortgage and his co-tenants not affected by such mortgage, or, as in the present case, by a party uniting both these characters, no inquiry has been made and findings of fact presented enabling this Court to determine whether the improvements are of a character, and the property so circumstanced, as to call for the recognition of equitable severalty in them, as regards the undivided interest derived under different titles. *Williman* v. *Holmes,* 4 *Rich. Eq.* 475. For the want of a proper basis of fact, that question cannot be considered in the present stage of the case ; but there should be an inquiry into such facts and proper action thereon."

Mr. Justice Haskell (the other Associate Justice, having filed a dissenting opinion), while concurring with the then Chief Justice in the conclusion that the executor of John W. Lewis had no authority to act for the mortgagees in making the sale to the Commercial Wharf and Cotton Press Company, and that the mortgagees had not ratified such sale either by acquiescence or otherwise, and also in the conclusion that such of the parties as had not appealed were bound by the circuit decree, limited his concurrence to these points, and said expressly that, while the mortgage to the extent not affected by the acquiescence of such of the parties as had not appealed from the former circuit decree, " remains a lien on the interest held by Lewis," yet, he adds, " what that interest is has not been considered by the Circuit Judge, for the whole case turned upon the point which is error, and the right to foreclose being thus denied, the question of partition was never reached."

It is manifest, therefore, that when the former Circuit decree was reversed and the case remanded, it was for the purpose of ascertaining " whether there are parties other than the devisee Julia A. Blake, and the co-devisees, entitled to participate in the assets of the estate of Anna M. Annely ;" next, " whether the improvements are of a nature and the property so circum-

stanced as to call for the recognition of equitable severalty in them as regards the undivided interest derived under different titles," according to the principles established by the case of *Williman* v. *Holmes, supra,* and after these matters were determined, then that a decree for foreclosure should be rendered. These inquiries have been made, and it has been ascertained that no persons other than the devisees are interested in the assets of the estate of Anna Maria Annely and that the property is so situated that it would be impracticable to make actual partition so as to give the benefit of the improvements to the improving co-tenant and leave the remainder to be sold under the mortgage; and to these findings no exception has been taken.

The Circuit decree, which is now before us for review, directs a sale of the one undivided sixth part of the property without making any allowance for the improvements, and if, as most likely will be the case, the proceeds of the sale shall prove insufficient to satisfy the mortgage debt, requires the Commercial Wharf and Cotton Press Company to account for " the rental value of the premises directed herein to be sold, while in the possession of the defendant, the Commercial Wharf and Cotton Press Company, from the filing of the complaint in this case," and requires that the costs of the case be paid by the said company. To this decree the defendants except on various grounds, which we do not propose to state in detail, but rather the questions which we understand to be raised by these exceptions.

The first question is as to the scope and effect of the former decision of this Court: whether it remanded the whole case for a hearing *de novo* of all the issues of law and fact. Upon this point we have already, in giving an outline of the case, indicated our opinion that the majority of this Court held, at the former hearing, that the defence then mainly relied upon— that the sale by the executor of the mortgagor was made by the authority of the mortgagees, or if not that it was ratified by their subsequent conduct—could not be sustained, and that the plaintiffs were entitled to a judgment of foreclosure.

The next question is whether the Commercial Wharf and

Cotton Press Company was any longer a necessary or proper party to the action. We think the company was a proper party. It was in possession of the mortgaged premises claiming an interest therein, and before that interest was severed and ascertained by partition, it seems to us clear that it was a proper party to the action. While the executor of the mortgagor had no authority, as it has been settled by the former decision of this Court, to make the sale free from the lien of the mortgage, he certainly had the authority to contract for the sale of the equity of redemption and this was all that could pass under the contract of sale, by which the company was enabled to take and retain the possession. We think, therefore, that there was no error on the part of the Circuit Judge in refusing to dismiss the complaint against the Commercial Wharf and Cotton Press Company.

The next inquiry is whether the Commercial Wharf and Cotton Press Company is entitled to any allowance for improvements which it put upon the common property upon an undivided one sixth of which the plaintiffs hold a mortgage. There is no doubt that the rule is that where a mortgagor, or a purchaser from him, puts improvements upon the mortgaged premises, and the premises are subsequently sold under a judgment for foreclosure, that there can be no allowance for the improvements, and that the same will inure to the benefit of the mortgagee to the extent necessary to satisfy his mortgage debt. But where premises are held by two persons as tenants in common, and one of the co-tenants gives a mortgage on his undivided share, and the other co-tenant enters into possession, as he has a right to do, and improves the common property, it seems to us that the same rule should apply as in cases of partition. In such case the mortgagee can claim nothing more than his mortgagor could, and if he, upon partition, would be required to allow the improving tenant anything for improvements, we see no reason why a mortgagee of an undivided share of real estate should not be required to make the same allowance to the improving tenant, upon a sale under a judgment for foreclosure.

In the recent case of *Scaife* v. *Thomson*, 15 *S. C.* 337, we

had occasion to consider the question of the right of an improving co-tenant to an allowance for improvements upon the common property where a sale for partition becomes necessary; and it was there held that while it was true that the rule was settled that the improving co-tenant was not entitled to the exclusive benefit of his improvements where he was aware at the time of making the improvements, that other persons were entitled to interests in the property so improved, yet " when one has expended his money in the improvement of property, under the honest conviction of exclusive ownership in himself, it seems to us' that there is manifest equity in allowing him the benefit of such improvements, as far as the same can be done without injury to the other co-tenants." That case also holds that where actual partition is practicable, it should be so made as to give to the party who had made the improvements that portion of the common property which had been improved, without accounting for the increased value imparted to such portion by the improvements (as was done in *Williman* v. *Holmes, supra*). " But even if such partition cannot be made and a sale should become necessary, we see no reason why, upon the same principle, the improving tenant should not be allowed out of the proceeds of the sale—not the *cost* of such improvements, but—the amount which such improvements can be shown to have 'enhanced the value of the property."

In the case now under consideration there cannot be a doubt that, when the Commercial Wharf and Cotton Press Company took possession of the property in question and contracted for the improvements, they were acting under the honest conviction, based upon the advice of eminent counsel, that they had acquired the exclusive ownership of the property free from the lien of the mortgage, and hence under the principle above announced, the company is entitled to an allowance for the improvements—and as it has been ascertained that actual partition is not practicable but that a sale of the undivided sixth part of the property will be necessary, the company must be held entitled to receive out of the proceeds of the sale—not the proportionate part of the *cost* of the improvements put upon the common property, but—the amount which such im-

provements shall, upon inquiry, be ascertained to have enhanced the value of such one undivided sixth part, and that the balance of the proceeds of the sale be applied to the mortgage debt.

The next inquiry is as to the rents and profits. This, too, it seems to us, is settled by the principles announced in *Scaife* v. *Thomson, supra,* and in taking the account of the rents and profits the Commercial Wharf and Cotton Press Company should not be held liable for such rents and profits as may be due to the improvements put upon the property by said company.

The only remaining inquiry is as to the costs. We are unable to perceive any just ground for imposing the entire costs of the case upon the Commercial Wharf and Cotton Press Company. So much of the costs as were incurred in resisting the unsuccessful defence, originally set up by that company, might with propriety be imposed upon it, but we see no reason why the balance of the costs should not be provided for in the usual way. This is a matter, however, more appropriately within the province of the Circuit Court when it comes to render a final judgment, and we prefer to leave it to that tribunal.

The judgment of this Court is that the judgment of the Circuit Court be so modified as to conform to the principles herein announced, and that the case be remanded to that Court for such further proceedings as may be necessary.